GERTIE MILLS ET VIR V. HERMAN BROWN ET AL.

No. A-6753. Decided October 15, 1958.
(316 S.W. 2d Series 720)

*N. C. Outlaw* and *Carlton B. Webb,* both of Post, for petitioners.

*Lon Sailers, Turner, Rodgers, Winn, Scurlock & Terry,* all of Dallas, and *J. L. Bianchi,* of Houston, for respondents.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

Petitioner, Gertie Mills, joined pro forma by her husband, filed this suit in the District Court of Garza County, Texas, against Herman Brown and others, as defendants, for recovery of title to an undivided interest in the oil and gas which had been or would thereafter be produced from Drilling Block 14 in the City of Post, Texas. The parties will be referred to as they were in the trial court. Certain parties intervened in this litigation, but their rights are governed by the same rules of law as the rights of Herman Brown et al, the original defendants. The interveners are respondents in this court, and they too will be included in the term defandants. Plaintiff's husband, being joined pro forma only, will not be further referred to.

Plaintiff alleged that on October 3, 1949 she acquired an oil and gas lease on Lot 5 and the south half of Lot 4, Block 69, City of Post, Garza County, Texas. This property was admitted by all parties to be within the limits of Drilling Block 14. Plaintiff further alleged that defendants had drilled an oil well within said Block 14, and were producing and marketing oil and gas therefrom. Plaintiff sought an accounting for her share of the 7/8ths working interest in the oil and gas production, and offered to pay her proportionate part of the drilling, development and operating costs of said well. It is admitted that if the plaintiff has any share in the production—which defendants vigorously deny—such share is 3/216ths.

Defendants answered denying that plaintiff had any share in the production from Drilling Block 14 for various reasons. The reasons which have been presented to this Court are that defendants have gained title to all of the 7/8th working interest in the oil and gas produced from the lot and one-half described in plaintiff's petition by virtue of the fact that defendants have in all things complied with the provisions of Ordinance No. 89, covering drilling of oil and gas wells in the City of Post. Prior to the passage of Ordinance No. 89, and at the time plaintiff

acquired her lease, Ordinance No. 82 was in force and it prohibited *any* drilling within the city of Post. Ordinance No. 89 was passed and became effective February 14, 1950. Plaintiff did not file her lease of record in the County Clerk's office until March 31, 1951, and defendants had no actual knowledge of the claim of plaintiff until December 26, 1951. Defendants completed their well on November 8, 1950, which they had drilled under a permit from the City of Post and it has been producing oil since that time. This production has been sold by defendants and payment made to those whom defendants claim are the owners thereof. No payments have been made to plaintiff.

On a trial to the court without a jury and after hearing the testimony offered by all parties, the trial court rendered judgment for the defendants and that plaintiff take nothing. On appeal the Court of Civil Appeals affirmed the trial court's judgment. 309 S.W. 2d 919.

We hold the judgments of both courts below were in error, and reverse and remand the cause. Respondents contend that the holder of an unrecorded lease or leasehold unknown to the operator who gives no notice of such unrecorded and unknown lease to the operator loses all interest under the lease and the 7/8th working interest covered by the lease becomes the property of the operator.

No party in this Court attacks the constitutionality of Ordinance No. 89. On the contrary, all parties contend it is a valid, constitutional ordinance. We, therefore, do not decide this question, but for this opinion, assume without deciding that the ordinance is constitutional.

Ordinance No. 89 contains some 18 sections and covers pages 87-105 in the Statement of Facts and is entirely too long to be set out in this opinion. We will refer to only those portions which are material to a decision of this cause. Generally speaking, the Ordinance may be said to provide a method for the drilling development and production of oil and gas in the City of Post. The City of Post is given the right to designate drilling blocks. Not more than one permit to drill a well shall be issued for each drilling block. Plaintiff's lease covers land situated in Drilling Block 14. The party seeking to drill the well is called applicant and operator, but we shall call him "operator" only. Operator must apply to the Board of Commissioners of Post for a permit. In his application he must set forth the lot or lots which he owns as well as the mineral interest which he owns

in said block and the nature of his ownership, and the names of all other owners of lots and of mineral interests, and the nature of their ownership. Those owning interests in either land or minerals, except the operator, are divided into two classes; (1) owners, (Sec. 5), and (2) persons holding oil and gas leases or equivalent contracts in any drilling block, (Sec. 11.) Plaintiff is not an "owner" as defined in the Ordinance; neither is she an operator. She only claims an oil and gas lease on property within the block and so comes within classification (2) above.

Section 5 deals with the rights of the operator and the owners of the other lots, blocks, and tracts of land not owned by the operator. Section 11 provides that "the interest of persons other than the operator who hold oil and gas leases or equivalent contracts in any drilling block shall be treated as part of the total working interest of said block, and such other persons holding such interest shall each make the following election with Operator prior to the time a well is commenced on said block." There are two elections (or options) prescribed in Section 11 of Ordinance No. 89. The owner of a mineral interest, other than the fee title to the land, shall be notice to the operator, within ten days from the issuance of a permit, elect (1) to receive a royalty interest only in proportion to "such other person's" mineral rights in the whole of the drilling block; or (2) to give notice that "such other person" will retain their ownership in the working interest and will pay his proportionate part of the costs of development and marketing of the production. It is admitted that plaintiff did not notify defendants of any election prior to the time the well was commenced, nor for some 15 or 16 months thereafter. She did place her lease of record within 5 months after the granting of the permit to defendants and their commencing the drilling of the well.

Section 11 of the Ordinance sets forth in plain and intelligible language the rights of "such other person" in the event they fail to elect under the first option. The Ordinance provides, "* * * then [in the event of failure to elect] he or they shall be deemed to have elected to agree that Operator shall be entitled to reimburse himself currently each month from such other persons' proportionate share of the proceeds of sale or production in kind for *twice* the amount of such other persons' proportionate part of the costs and expenses as set out in Option (1) above." The costs and expenses set out under Option (1) are defined as "* * * their share of all costs and expenses, properly allocated to said well and drilling block by Operator in accordance with accepted accounting practice, currently each month.

* * * ". Nowhere in the Ordinance are there any words transferring or conveying the interest of "such other person" to the operator. Section 12 of the Ordinance denies any such intention. It reads:

"Section 12. Neither this ordinance nor any permit issued hereunder shall be interpreted to grant any right or license to the permittee to enter upon or occupy in any respect, in drilling or production operations, any land except by the written consent of the owners; nor shall it limit or prevent the free right of any lot owner to contract for the amount of royalty to be paid with respect to his own land or other consideration therefor, or for damages, rights or privileges with respect thereto. Neither shall this ordinance nor any permit issued hereunder prevent one or more permittees from pooling drilling blocks when such action has been approved by written consent of all lot owners directly involved."

■ The lease which plaintiff received October 3, 1949 from the owner of the land, although not recorded, was a valid conveyance, and vested the title in the plaintiff to the 7/8ths working interest in the land covered by the lease. Art. 6627, Vernon's Annotated Texas Civil Statutes; 36 Texas Jur. 529, Sec. 75; Note 14, p. 532, and authorities cited therein. Art. 1288, Vernon's Annotated Texas Civil Statutes, prescribes the requisites of a conveyance of land, or any interest therein. No contention is here made seeking to uphold any limitation title or parol conveyance. Limitation was raised by the pleadings below, but has not been assigned in this Court. It is elementary that an oil and gas lease is an interest in land, Hager v. Stakes, (1927) 116 Texas 453, 294 S.W. 835; Sheffield v. Hogg, 1934, 124 Texas 290, 77 S.W. 2d 1021, 80 S.W. 2d 741; Toledo Soc. for Crippled Children v. Hickok, 1953, 152 Texas 578, 261 S.W. 2d 692; Pich v. Lankford, 1957, 157 Texas 335, 302 S.W. 2d 645. Respondents contend that when the words "owner" or "such other person" are used in either Section 5 or Section 11 of the Ordinance, they must mean an "owner" or "such other person" whose interests are of record or known to the operator. We can find no basis for such interpretation. Ordinance No. 89 is not ambiguous. It is plain and intelligible on its face. We therefore have no right to add words to it or take them from it. The same rules apply to the construction of municipal ordinances as to the construction of statutes. See authorities cited in support of text in 30A Texas Jur. 288-289, Sec. 298.

The City Commission, at the time it passed this Ordinance,

had in mind that there might be unrecorded instruments effecting the title either to the land or separate mineral interests. Section 7 of the Ordinance, in discussing the contents of the application filed by operator for a permit to drill a well, provides that the application shall show "what proportion and what parts of the drilling block the appellant owns in fee or holds under lease or drilling contract from the owners." It then requires a map or plat to be attached to the application showing the above information, the exact location of the proposed well, "together with designation of the leasehold interests outstanding and held by others than applicant *and of record* in the Garza County Oil and Gas Lease Records.". (Emphasis added). Likewise, Section 8 of the Ordinance, which provides for notice to be given of the filing of the application, states a copy of the notice shall be sent by registered mail to "each owner and lessee of record," addressed to the last known address of such owners and leaseholders "if known to the applicant." These provisions of the Ordinance show that the City Commission knew how to provide for action in the event there were unrecorded or unknown owners or leaseholders. The fact that the Commission did not qualify the words "owners" or "leaseholders" in Sections 5 and 11 of the Ordinance indicate they intended for the language to include all "owners" or "leaseholders."

We can see no good, valid reason why a person who has an unrecorded leasehold interest in the drilling block should be treated in any different manner than a known or recorded leaseholder who gives no notice to the operator of his election under the Ordinance. As to the known or recorded leaseholder, it is admitted by respondents "such other person" would share in the working interest after paying the prorata part of the costs. In the case at bar, no payments of this proportionate interest have been made to plaintiff. Defendant operators have simply kept plaintiff's share of the production under the claim that Ordinance No. 89 transferred the title from plaintiff to defendants because plaintiff had not recorded her lease in the Deed Records of Garza County, and the existence of such lease was unknown to defendants at the time they commenced drilling the well or within ten days thereafter. The Ordinance does not so provide, and we know of no legal means of so transferring title to real estate from one owner to another by any such method as defendants claim. We hold plaintiff is still the owner of her property and entitled to receive from defendants her proportionate share of the proceeds from the sale of her property.

Plaintiff, having recognized the validity of the Ordinance

and seeking to recover thereunder, must, of necessity, comply with the terms thereof in the event of her recovery. We have held that plaintiff is entitled to recovery of her interest as if it were a part of the working interest and governed by the second election, or option, in Section 11. This gives her such right of recovery burdened with the right of the operator to reimburse himself "currently each month from [her] proportionate share of the proceeds of sale or production in kind for *twice* the amount of such other persons' [her] proportionate part of the costs and expenses" as defined in the first election, or option.

The judgments of both courts below are reversed and this cause is remanded to the trial court with instruction to determine plaintiff's proportionate share (3/216ths) of the value of the past production from Drilling Block 14, City of Post, Texas, less twice her proportionate part of the costs and expenses properly allocated to said well and drilling block by the defendants-operators, in accordance with accepted accounting practices. For this net amount, as determined by the trial court, judgment shall be rendered in favor of plaintiff against the defendants. Plaintiff shall have judgment against the defendants for proportionate future production from Drilling Block 14, less proportionate future costs as above set out. All costs of court are to be adjudged against the defendants.

Opinion delivered October 15, 1958.

Associate Justice Smith dissenting.