**Rayford NICHOLS, Jr., Appellant,**

v.

**LINCOLN TRUST COMPANY, custodian for the Benefit of Thomas STERN, Appellee.**

**No. 07–99–0290–CV.**

Court of Appeals of Texas, Amarillo.

Nov. 10, 1999.

Johnston & Miller, J. Craig Johnston, Lubbock, for appellant.

Timberlake & Weaver, Scott W. Sharp, Lubbock, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

JOHN T. BOYD, Chief Justice.

Presenting one issue which, he says, demonstrates the trial court erred in

granting a summary judgment in favor of appellee Lincoln Trust Company, Custodian for the benefit of Thomas Stern [Lincoln Trust], appellant Rayford Nichols, Jr. [Nichols] seeks reversal of that judgment. In the judgment, the trial court quieted title in Lincoln Trust with regard to property formerly owned by Nichols, which had undergone a tax foreclosure. In his issue, Nichols argues the trial court erred in denying him the two-year right of redemption granted by section 34.21 of the Texas Tax Code on residence homesteads. Agreeing, we reverse the judgment of the trial court.

A review of the factual history of this matter will be helpful to our discussion of the question before us. In 1992 or 1993, Nichols bought, among others, two pieces of property located in Lubbock County. The street addresses of those tracts are 1) 1521 E. Broadway, and 2) 1517 E. Broadway [the properties].[1] In compliance with a 72nd District Court order, the Lubbock County Sheriff offered the properties for sale on March 3, 1998, but because he did not receive any bid equal to their adjudged value, pursuant to proper statutory procedures, the properties were "struck off" to the Lubbock Central Appraisal District. The district recorded its deeds on March 11, 1998.

Subsequently, on April 20, 1998, the properties were conveyed to Lincoln Trust. At the time they were conveyed to Lincoln Trust, the properties, and other properties not involved in this suit, were the subject of certain orders issued by the Structural Standards Commission of the City of Lubbock [the orders] dated June 18, 1996, and filed in the deed records of Lubbock County on July 11, 1996. Having found that the structures located on the properties were "dilapidated, substandard, unfit for human habitation, and a hazard to the public health, safety and welfare," those orders required that all structures on the properties be repaired, demolished or removed at least 5,000 feet outside the city limits, and the property be completely cleaned. On July 17, 1996, Nichols filed suit in Lubbock County District Court against the City of Lubbock appealing these orders. His original petition was couched in general terms and claimed the properties were not in the condition alleged by the city, and he sought reversal of the orders and a "reasonable time to repair any alleged deficiencies in the properties in question." In that pleading, he made no reference as to whether or not he was claiming any of the properties as his homestead.

On December 18, 1998, Nichols filed an application in the suit seeking a temporary injunction and temporary restraining order. As a basis for seeking that relief, he alleged that on November 20, 1998, the properties in question had been sold to Lincoln Trust through an involuntary tax sale, but that under Article 8, § 13 of the Texas Constitution and section 34.21 of the Texas Tax Code [2] [the Code], he was entitled to a right to redeem the property. He further alleged that he "has taken steps to acquire the necessary financing and fully intends to redeem the property ... prior to the deadline for redemption." He also averred that if the injunctive relief was not granted, his "home will likely be demolished before the present case proceeds to final adjudication."

Because Nichols's claim of a right of redemption clouded its title, on January 28, 1999, Lincoln Trust filed an intervention in the pending suit asking for a judgment quieting its title against any right of redemption by Nichols. By the summary judgment which is the subject of this appeal, the trial court quieted title to the properties in Lincoln Trust, found that

---

1. Although Lincoln Trust refers to three properties in its brief, as do the documents contained in the clerk's record, Nichols only challenges the trial court's decision as to these two properties.

2. Later references to sections and subsections are to those sections and subsections of the Texas Tax Code, unless otherwise specifically designated.

Nichols's right of redemption had expired, and assessed attorney's fees and expenses in the amount of $1,583.97 against Nichols. Hence, this appeal.

In challenging the summary judgment, Nichols contends the properties were his homestead and, by virtue of section 34.21(a), he is entitled to a two-year redemption period which would not expire until April 20, 2000, two years from the date the deed to Lincoln Trust was filed of record.[3] Lincoln Trust counters that because Nichols had not formally designated the property as his homestead as required by statute, he is not entitled to the two-year homestead redemption period. Rather, he is only entitled to the six-month redemption period for non-homestead property prescribed in section 34.21(b) of the Code and, because it·was uncontroverted that the six-month period had elapsed, Lincoln Trust concludes that it was entitled to the summary judgment.

Thus, the question which we must determine is which of the subsections of 34.21 are applicable here. A corollary to that question is whether an individual must file a formal application seeking a homestead tax exemption in order to be entitled to the two-year redemption period.

Because the properties were first "struck off" to the appraisal district and then sold to Lincoln Trust, if the properties were homestead, subsection (c) is applicable. In pertinent part, that subsection reads:

> (c) If real property that was the owner's *residence homestead* ... when the suit to collect the tax was filed has been resold by the taxing unit under Section 34.05, the owner of the property having a right of redemption may redeem the property within two years after the date on which the taxing unit files for record the deed from the sheriff or constable.... (Emphasis added).

**3.** Pursuant to section 34.21(a), Nichols claims his right of redemption expires on April 20, 2000. However, as we will discuss later, section 34.21(c) applies, and under subsection

Tex. Tax Code Ann. § 34.21(c) (Vernon Supp.1999). Section 34.21(g) provides that the term "residence homestead" has the meaning assigned by Section 11.13. Tex. Tax Code Ann. § 34.21(g) (Vernon Supp. 1999).

The dispute here arises from the meaning of "residence homestead" as used in section 34.21(c). "Residence homestead" is defined in section 11.13(j)(1) of the Code as:

> a structure (including a mobile home) or a separately secured and occupied portion of a structure (together with the land, not to exceed 20 acres, and improvements used in the residential occupancy of the structure, if the structure and the land and improvements have identical ownership) that:
>
> (A) is owned by one or more individuals, either directly or through a beneficial interest in a qualifying trust;
>
> (B) is designed or adapted for human residence;
>
> (C) is used as a residence; and
>
> (D) is occupied as his principal residence by an owner or, for property owned through a beneficial interest in a qualifying trust, by a trustor of the trust *who qualifies for the exemption.* (Emphasis added).

Tex. Tax Code Ann. § 11.13(j)(1) (Vernon Supp.1999).

In pertinent part, section 11.43(a) of the Code provides:

> (a) To receive an exemption, a person claiming the exemption, other than an exemption authorized by (other sections not relevant here), *must apply for the exemption. To apply for an exemption, a person must file an exemption application form with the chief appraiser for each appraisal district in which the*

(c), the two-year redemption expires on March 11, 2000, two years from the date the taxing unit recorded the deed.

*property subject to the claimed exemption has situs.* (Emphasis added).

Tex. Tax Code Ann. § 11.43(a) (Vernon Supp.1999).

Subsection (j) of section 11.43 provides:

(j) An application for an exemption under Section 11.13 must:

(1) list each owner of the residence homestead and the interest of each owner;

(2) state that the applicant does not claim an exemption under that section on another residence homestead;

(3) state that the facts contained in the application are true; and

(4) include a sworn statement that the applicant has read and understands the notice required by Subsection (f).[4]

Tex. Tax Code Ann. § 11.43(j) (Vernon Supp.1999).

As we have noted, it is Lincoln Trust's position that because it is uncontroverted that Nichols had never actually filed the application seeking a tax exemption referred to in section 11.43 of the Code, he was not a person "who qualifies for the exemption" within the purview of section 11.13(j)(1)(D). Thus, it reasons, he could not be entitled to the two-year redemption period and the summary judgment was properly granted. In support of this position, it argues that "[t]he definition of 'residence homestead' as contained in the *Tex. Tax Code* is authorized by *Tex. Const.* art. VIII § 1–b(c), which provides in pertinent part that 'The legislature by general law may define residence homestead for purposes of this section.'" Thus, it concludes, unless the application has actually been filed, an individual has not completed the prerequisites of a "residence homestead."

To resolve the dispute, we must determine whether the phrase "who qualifies for the exemption" refers only to the trust property referred to immediately before the phrase or whether it also refers to, and includes in that terminology, the phrase referring to property "that is occupied as his principal residence by an owner."

Section 311.011(a) of the Code Construction Act [the Act][5] provides that words and phrases should be read in context and construed according to the rules of grammar and common usage. Additionally, in construing a statute, our primary objective must be to give effect to the legislature's intent. *Mitchell Energy Corporation v. Ashworth*, 943 S.W.2d 436, 438 (Tex.1997).

As we have noted, subsection (j)(1)(D) initially refers only to property that "is occupied as his principal residence by an owner." It is only after the insertion of the word "or" and the insertion of a comma, that the phrase "for property owned through a beneficial interest in a qualifying trust, by a trustor of the trust *who qualifies for the exemption*" occurs. (Emphasis added). In Black's Law Dictionary p. 1095 (6th ed.1990) and in relevant part, "or" is defined as "[a] disjunctive particle used to express an alternative or to give a choice of one among two or more things." Considered in that light, it appears that the particular requirement of subsection (j)(1)(D) could be met by one of two different scenarios, namely, 1) an owner who occupies the property as his principal residence, or 2) property owned through a beneficial interest in a qualifying trust by a trustor who qualifies for the exemption. Thus, it appears that the intent of the legislature was to give the benefit of the statute not only to an *owner* who actually occupied the property but to extend that benefit also to a *trustor* who occupied

---

4. Subsection (f), as relevant here, requires the comptroller in prescribing the contents of the application, to require a driver's license number, personal identification certificate number, or social security number be included as well as an enumeration of the penalties for making or filing an application containing a false statement as well as other requirements not material to the question before us.

5. The Code Construction Act is contained within sections 311.001 *et seq.* of the Texas Government Code (Vernon 1998).

property owned through a beneficial interest in a qualifying trust and who otherwise was qualified to claim the exemption on behalf of the trust. Apparently, the legislative intent is to allow an owner who occupies a homestead an additional period of time within which to redeem that homestead. To hold that the mere failure to actually file a claim form would deprive the owner of the right to claim his homestead would be to negate the legislative intent. The construction which we give the insertion of the disjunctive "or" preserves the legislative purpose.

The use of the word "qualifies" is also worthy of consideration but is not separately defined in Black's Law Dictionary or elsewhere. "Qualifies" is the same or similar to the terms "qualify" and "qualified," mostly depending on how each of the three words is used. The definition of "qualify" is "[t]o make one's self fit or prepared to exercise a right, office, or franchise. To take the steps necessary to prepare one's self for an office or appointment, as by taking oath, giving bond, etc." Black's Law Dictionary p. 1241 (6th ed.1990). While "qualified" is defined as "[a]dapted; fitted; entitled; susceptible; capable; competent; fitting; possessing legal power or capacity; eligible; as a 'qualified voter.' " *Id.*

We recognize Lincoln Trust's contention that a homestead owner could be "qualified" to claim the tax exemption, but in order to be entitled to actually receive the exemption, the legislative intent is that he must have filed the form specified by the comptroller. Lincoln Trust has likened the same argument to the facts before us. Specifically, Lincoln Trust argues that even if the properties "qualify" as a "residence homestead," Nichols is not entitled to receive the two-year right of redemption because he did not file the appropriate form for a tax exemption. In other words, only homestead property on which a homestead tax exemption is actually received qualifies under section 34.21(c) to a two-year right of redemption. We recognize,

with regard to the tax exemption, the reasons for requiring this additional step, and section 11.43 titled "Application for Exemption" clearly necessitates such a filing. If a form was not required, the taxing unit would have difficulty in the completion of the tax rolls, in forecasting its probable tax revenues, and other reasons of like nature. However, the extension of the section 11.43 application requirement to section 34.21(c) is not for this court to decide.

In arriving at our interpretation of the relevant statute, we have not overlooked Lincoln Trust's public policy argument, *i.e.,* that "[a] potential buyer of property from an appraisal district should have the opportunity to examine the appraisal district records and determine, before making the purchase, the length of the redemption period." However, we point out the requisites listed in section 34.21(c) to redeem property resold by the taxing unit. The owner, having the right of redemption, must pay the purchaser from the taxing unit "the amount the purchaser paid for the property, the amount of the fee for filing the purchaser's deed for record, the amount paid by the purchaser as taxes, penalties, interest, and costs on the property, plus a redemption premium of 25 percent of the aggregate total if the property is redeemed in the first year of the redemption period or 50 percent of the aggregate total if the property is redeemed in the second year of the redemption period." This enumeration is evidence of legislative intent to reimburse the buyer for any inconvenience it might have suffered during the interim period.

In his affidavit filed in response to the summary judgment motion, Nichols claimed he occupied the properties as his principal residence until September 1998. In this appeal, Lincoln Trust does not seriously contest the fact that if its interpretation of the statutes is not correct, Nichols's claim is sufficient to raise a fact question necessary for a factfinder to resolve.

Accordingly, Nichols's sole issue is sustained, the judgment of the trial court is reversed and the cause remanded to the trial court.